[Crim. No. 799.   Fourth Dist.   Aug. 26, 1954.]

THE PEOPLE, Respondent, v. CHARLES R. TURNEY, Appellant.

*Assigned by Chairman of Judicial Council.

Cunningham, Parry & Holcomb for Appellant.

Edmund G. Brown, Attorney General, and Robert H. Baida, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The appellant and one Wilson were jointly charged with burglary. Wilson was also charged with prior convictions for robbery, and the appellant with prior convictions for burglary. They pleaded not guilty, but admitted the prior convictions. A jury found each defendant guilty of burglary in the second degree, and Turney has appealed from the judgment.

At 10:25 p. m. on the night of November 17, 1953, a police officer, while walking his beat on El Cajon Boulevard in San Diego, saw the defendant Wilson in the front room of a café. Wilson ran toward the rear of the café and the officer ran around the building in an attempt to stop him. The officer found a rear window open, but no one there. On his return to the front of the building he found the front door open. On investigation it was found that a screen had been removed from the window of a storeroom in the rear and the window opened, and that a door leading from the storeroom to the front room was off its hinges and leaning against the wall. The owner of the café testified that the doors were locked when she left the premises earlier that evening, and that when she left there were five Oh Henry candy bars in a box by the cash register. These candy bars were gone and a lot of material near the cash register was pilfered and pulled out.

A 1951 Ford (which belonged to Wilson's father) was

parked near by. The officer noticed that its radiator was warm, and decided to keep an eye on it. Two hours later he saw Wilson and this appellant pouring gasoline from a one-gallon can into the gas tank of this car. They told the officer that they had run out of gas and had just walked down the street to get some. The officer checked the gasoline gauge in the car and it registered "between ¾ and a full tank." The defendants were arrested and an Oh Henry candy bar was found in Wilson's pocket. Wilson's fingerprints were found on the door which had been removed from its hinges. On being questioned by the officers the appellant stated that he and Wilson had tried to enter by the back door but were unsuccessful; that they then removed the screen, raised the rear window and crawled in; that he removed the pins from the door with a screwdriver belonging to Wilson; and that they then removed the door and entered the main part of the café. Wilson told the officers that when he saw an officer looking into the window he ran toward the back; that he then returned, opened the front door, and ran out; and that he and the appellant met a short distance away and later returned to the car with a can of gasoline.

Wilson did not testify at the trial. The appellant testified, among other things, that the automobile in which he and Wilson were riding "just quit" at around 10 p. m.; that they stayed in the car and talked for about 15 minutes; that he was angry and started walking down El Cajon Boulevard; that about an hour later he met Wilson on that street; that they got gas and returned to the car; and that they needed the gas to prime the carburetor and not because the car was out of gas. While on the stand, he admitted that he had told the officers that he had had trouble with the door inside the café and had to pull it off, and that he had told the officers that he ran out the front door of the café. He denied that he had ever been in the café until he was taken there by the police, and denied that he had made the other statements to the officers which they attributed to him.

Appellant's main contention is that the court erred in denying his motion that either he or his codefendant be allowed to obtain other counsel, or for separate trials. In his brief it is stated that his attorney requested a conference with the district attorney and judge in chambers prior to proceeding with the case; that at such a conference his counsel "pointed out" that he had just discovered what appeared to him to be a conflict of interest between the two defendants,

having been informed of the true circumstances which were incompatible with the interest of the defendant Wilson; that his attorney further "elaborated" that he had made a personal investigation upon his arrival in San Diego the day before which had corroborated his new belief; and that the court arbitrarily disposed of the matter by a statement to the effect that the defendants had had three months in which to tell their attorney the truth. It is argued that Wilson was the only person, aside from the appellant, who knew all of the facts of the case; that Wilson had a right not to testify against himself; that Wilson apparently valued the right against self-incrimination higher than his moral duty to testify as to facts which would, if believed, have exonerated the appellant; and that the attorney representing both defendants was placed in a position where he could not advise either of his clients how to proceed without thereby prejudicing the other client.

As appellant admits, the record is silent with respect to the matters thus relied on. The only thing shown by the record is that when the case was called both sides announced that they were ready, and appellant's counsel stated that he represented both defendants. Appellant's counsel then asked if he and the district attorney might see the court for a few minutes. The record shows that a conference was then held in chambers, out of the presence of the jury. It does not show what was there said. When the trial was resumed counsel for both sides announced that they were ready and the trial proceeded.

Not only is there no record of the matters now relied on, but the record discloses no motion or request for a continuance or other motion of any kind. With respect to what occurred at the conference in chambers, the statement in appellant's brief discloses a situation which is quite different from that which appears in *People* v. *Robinson*, 42 Cal.2d 741 [269 P.2d 6]. In that case, where the evidence was close, the defendant in question requested a continuance for the purpose of securing other counsel. He had previously told the counsel representing both defendants that he did not want that counsel to represent him, and that counsel had advised him to secure other counsel. Each defendant took the stand and testified to an independent alibi. In this case all that is claimed in the brief is that the judge was told in chambers, in effect, that counsel had just discovered what appeared to him to be a conflict of interest as between the two persons he

represented. Nothing is pointed out which would disclose such a conflict of interest; no dissatisfaction with counsel on the part of the appellant appears; no desire and intention to secure other counsel was pointed out; and no desire or request for a continuance for that purpose was expressed. In the absence of any record it may be assumed that the trial judge performed his duty, and satisfied himself that counsel could represent both defendants fairly and without prejudice. The fact that no request for a continuance was made when the trial resumed tends to indicate that the appellant and his counsel were then satisfied with the result of the conference.

The failure of his codefendant to take the stand and testify does not appear to have been prejudicial to the appellant. There was strong evidence that both the appellant and his codefendant entered these premises on this occasion. If it could be assumed that the codefendant, if represented by different counsel, would have testified that the appellant was not there, it could not reasonably be assumed that the jury would have believed that testimony in view of the other evidence, including the admissions made by the appellant while on the stand. The record discloses neither error nor abuse of discretion and, regardless of any lack of record, no miscarriage of justice appears.

The only other point raised is that the court erred in a part of an instruction given in response to a request made when the jury returned to the courtroom for further instructions. It is argued that this was a parable and not an instruction; that it referred to the crime of robbery with a gun, with two other men watching as lookouts; that it had nothing to do with the issues of this case; and that it was prejudicial to the appellant.

When the jury returned to the courtroom the court asked what the question was. The foreman of the jury replied "We want the question a little more clear on union of action between two persons." The court fully answered the question suggested, correctly stating the law in that connection. While so doing, by way of illustration he made the remark which is now objected to. He started out by saying "As an example, we will take a different type of case. We will take robbery for instance." He then pointed out how the rules would apply in such a case where several persons were charged with the robbery. Neither error nor prejudice appears.

The judgment is affirmed.

Mussell, J., concurred.